UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>ANTHONY J. GASSON,<br><br>Debtor. | Chapter 7<br><br>Case No. 12-23703 (RDD) |
| PREMIER CAPITAL, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>ANTHONY J. GASSON,<br><br>Defendant. | Adv. Proc. No. 14-_____ (RDD)<br><br>**COMPLAINT TO DENY DEBTOR'S DISCHARGE PURSUANT TO 11 U.S.C. § 727 AND FOR OTHER RELATED RELIEF** |

Plaintiff, PREMIER CAPITAL, LLC ("Premier" or "Plaintiff"), by and through its attorneys, Riker, Danzig, Scherer, Hyland & Perretti, LLP, by way of Complaint against the debtor herein, ANTHONY J. GASSON (the "Debtor" or "Gasson"), to deny Debtor's discharge pursuant to 11 U.S.C. §§ 727(a)(2), (a)(3) and (a)(5), alleges as follows:

## **JURISDICTION AND VENUE**

1.  This adversary proceeding arises in and relates to the bankruptcy case captioned In re Anthony J. Gasson, United States Bankruptcy Court for the Southern District of New York (the "Court"), Case No.: 12-23703 (the "Bankruptcy Case").

2.  The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

3.  This adversary proceeding has been brought in accordance with Rule 7001(4) of the Federal Rules of Bankruptcy Procedure.

4. Venue properly lies in this Court pursuant to 28 U.S.C. § 1409(a).

5. This is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2)(J).

## PARTIES

6. Plaintiff, Premier Capital, LLC, is a creditor in the Bankruptcy Case, and is a Delaware limited liability corporation, registered in Massachusetts, that maintains its principal place of business at 226 Lowell Street, Wilmington, Massachusetts.

7. Defendant, Anthony J. Gasson, is an individual residing at 89 Greenacres Avenue, Scarsdale, New York 10583 and the debtor in the Bankruptcy Case.

## GENERAL ALLEGATIONS COMMON TO ALL COUNTS

A. **The Bankruptcy Case**

8. On September 27, 2012 (the "Petition Date"), Gasson filed a voluntary petition for relief with the Court under Chapter 7 of Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), commencing the Bankruptcy Case.

9. Thereafter, the Office of the United States Trustee for Region II (the "U.S. Trustee" ) appointed Arlene Gordon-Oliver to serve as the chapter 7 trustee in the Debtor's case (the "Trustee") [Docket No. 5].

B. **Gasson's Obligations to Premier**

10. The Debtor's relationship with Premier arises out of several loans (the "Loans") made by JP Morgan Chase Bank ("Chase") to Gasson individually and certain entities connected with Gasson, including T.G. Capital Corp. ("T.G. Capital"), Easley Textile Corporation and Swirl II Ltd., Inc. ("Swirl"), which Loans Gasson

2

personally guaranteed. These guaranties resulted in several judgments against Gasson as further described herein (collectively, the "Judgments").

11. In particular, as assignee of Chase and various other intermediaries, Premier is the owner of the following Judgments and the underlying indebtedness:

(a) a Judgment in the face amount of $498,500.54 entered January 16, 2004, in the Supreme Court of the State of New York, County of Nassau in the action styled <u>JPMorgan Chase Bank vs. Joseph H. Santarlasci, Jr. and Anthony J. Gasson</u>, Index No. 004826/2002;

(b) a Judgment in the fact amount of $72,510.59 entered November 14, 2008, in the Supreme Court of the State of New York, County of Westchester in the action styled <u>Premier Capital, LLC, assignee in interest to N.C. Venture I, L.P. vs. T.G. Capital Corp. and Anthony J. Gasson</u>, Index No. 16802-08; and

(c) a Judgment in the face amount of $147,026.66.

12. In total, as of the Petition Date, Gasson owed Premier in excess of $718,036 (the "Premier Indebtedness").

C. **Formation of Soroban, Inc.**

13. In or about 2001, Gasson had his wife, Jacqueline Gasson ("Debtor's Wife"), to form an entity, Soroban, Inc. ("Soroban"), through which Gasson would conduct his professional and business activities.

14. At the time the Debtor had the Debtor's Wife form Soroban, the Debtor was subject to various personal obligations including but not limited to his

3

indebtedness to Premier's predecessors and a substantial indebtedness to the United States Internal Revenue Service.

15. Upon information and belief, the Debtor's Wife contributed no assets to Soroban, rather the only assets of Soroban were those originating with the Debtor or other entities in which he held an interest.

16. Upon information and belief, when the Debtor's Wife formed Soroban, the Debtor's Wife never intended to have any involvement with Soroban.

17. Rather, one of the main purposes of Soroban was to permit the Debtor to provide consulting services on behalf of Soroban.

18. Another of the main purposes of Soroban was to permit the Debtor to continue to sell coats under the brand name "Models Coat" which was a trade name used by the Debtor in prior businesses owned and controlled by him (the "Models Coats Business").

19. In fact, upon information and belief, at the time the Debtor had the Debtor's Wife form Soroban, the Debtor owned the Models Coats Business in his own name, having acquired it from Swirl II, Ltd., another business in which the Debtor had an interest which had been a debtor in its own right before this Court in Case No.95-45472.

20. The Debtor and the Debtor's Wife formed Soroban with the actual intent to hinder, delay and defraud the Debtor's creditors by permitting the Debtor to earn a living through providing consulting services and continuing the Models Coats Business while drawing no salary and having no assets to which the Debtor's creditors could look to satisfy their claims.

4

**D.**     **Operation of Soroban**

21.    From its formation to the present, Soroban has had no employees.

22.    From its formation to the present, Soroban's two primary businesses have been the Models Coats Business and a consulting business through which Soroban billed its clients for consulting services provided by the Debtor, primarily businesses owned and controlled by Martin Terzian under the general name "Pacific Group."

23.    From its formation to the present, only the Debtor has maintained the books and records of Soroban.

24.    From its formation to the present, the Debtor's Wife has had no involvement in the business of Soroban.

25.    From its formation to the present, Soroban has paid the Debtor approximately $600 per month as checks drawn on the account of Soroban payable to "Cash."

26.    Between 2009 and 2012, the gross receipts of Soroban ranged from at least $193,000 to over $375,000 per year.

27.    From these revenues, between 2009 and 2012 Soroban's gross profit (i.e. revenues less cost of goods sold) ranged from at least $182,000 to over $241,000, from which Soroban reported "ordinary business income" of between just under $25,000 to over $50,000.

28.    Premier has requested from the Debtor an itemization of the deductions from the revenues of Soroban but the Debtor failed and refused to produce the requested documents to Premier.

29. The Debtor and the Debtor's Wife operated Soroban in a manner designed to hinder, delay and defraud the Debtor's creditors by permitting the Debtor to earn a living through providing consulting services and continuing the Models Coats Business while drawing no salary and having no assets to which the Debtor's creditors could look to satisfy their claims.

E.   **E-Bikes by Revolve**

30. In or before February 2011, the Debtor began to pursue a new product line, electric bicycles, marketed under the trade name "E-Bikes by Revolve" (the "E-Bikes Business").

31. The Debtor held himself out as the founder of the E-Bikes Business.

32. Yet, the Debtor conducted the E-Bikes Business through a company, Genesis Electric Vehicles ("Genesis"), owned by one of his daughters, Melissa Gasson ("Debtor's Daughter").

33. At the time the Debtor had the Debtor's Daughter form Genesis, the Debtor was subject to various personal obligations including but not limited to his indebtedness to Premier's predecessors and a substantial indebtedness to the United States Internal Revenue Service.

34. Upon information and belief, the Debtor's Daughter contributed no assets to Genesis, rather the initial capital and expenses of Genesis were paid from the assets and operations of Soroban.

35. Upon information and belief, when the Debtor's Daughter formed Genesis, the Debtor's Daughter never intended to have any involvement with Genesis.

6

36. Rather one of the main purposes for the Debtor's Daughter to form Genesis was to permit the Debtor to develop the E-Bikes Business.

37. The Debtor and the Debtor's Daughter formed Soroban with the actual intent to hinder, delay and defraud the Debtor's creditors by permitting the Debtor to earn a living through conducting the E-Bikes Business while drawing no salary and having no assets to which the Debtor's creditors could look to satisfy their claims.

F. **Premier's Investigation of the Debtor and Extension of Premier's Time to Object to the Debtor's Discharge**

38. In or about December 2012, through counsel, Premier approached counsel to Gasson expressing a desire to investigate the Debtor's financial affairs and to determine if grounds existed to object to the Debtor's discharge pursuant to 11 U.S.C. § 727.

39. By Stipulation and Order entered December 21, 2012 [Docket No. 29], Premier's deadline to object to the Debtor's discharge was extended to July 1, 2013. From time to time, between June 2013, and March 31, 2014, Premier requested and obtained further extensions of Premier's deadline to object to the Debtor's discharge, the last of which expires March 31, 2014. [See Docket Nos. 33, 35, 36, 37, 38, 39 and 40.]

40. After communicating with the Trustee and conducting an independent investigation, by Ex Parte Application for FRBP 2004 Examination from Debtor and Related Entities filed June 17, 2013 [Docket No. 31], Premier requested authority to conduct examinations of the Debtor and various related entities under Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Rule 2004 Motion"). The

Rule 2004 Motion was granted by Order of the Court dated July 11, 2013 [Docket No. 35] and Premier served Subpoenas to various entities, including the Debtor, Soroban, certain of the "Pacific Group" companies, and certain other entities owned or controlled or believed to be owned or controlled by the Debtors' family members.

41. Between May 2013 and January 2014, Premier obtained responses to the Subpoenas and conducted the deposition of the Debtor over two separate days. During the second day of the Debtor's Rule 2004 examination, Premier specifically requested that the Debtor produce the itemized statements of "Other Deductions" of the business of Soroban, as referenced in Soroban's tax returns.

42. To date, the Debtor has failed and refused to provide these documents to Premier.

## FIRST COUNT
### Denial of Discharge – 11 U.S.C. § 727(a)(2)
### Transferring and Concealing Assets to Hinder Creditors

43. Premier repeats and realleges the allegations contained in paragraphs 1 through 42 as if set forth fully herein.

44. The Debtor and the Debtor's Wife formed Soroban to permit the Debtor to continue to generate income for himself and his family while transferring, removing and concealing his income and assets from the Debtor's creditors, including but not limited to Premier and the United States Internal Revenue Service.

45. The Debtor and the Debtor's Wife transferred the Models Coats Business to Soroban to remove and conceal that business and the income it generated from the Debtor's creditors, including but not limited to Premier and the United States Internal Revenue Service.

8

46. The Debtor and the Debtor's Wife operated Soroban in a way which permitted the Debtor to continue to generate income for himself and his family while transferring, removing and concealing his income and assets from the Debtor's creditors, including but not limited to Premier and the United States Internal Revenue Service.

47. The Debtor and the Debtor's Wife operated Soroban in a way which permitted the Debtor to continue the Models Coats Business and to remove and conceal that business and the income it generated from the Debtor's creditors, including but not limited to Premier and the United States Internal Revenue Service.

48. The Debtor and the Debtor's Wife operated Soroban continuously through the Petition Date and thereafter in a way which transferred, removed and concealed the Debtor's consulting services and the Models Coats Business from the Debtor's creditors, including but not limited to Premier and the United States Internal Revenue Service.

49. The Debtor and the Debtor's Daughter formed Genesis to permit the Debtor to conduct the E-Bikes Business and to remove and conceal that business and the income it generated from the Debtor's creditors, including but not limited to Premier and the United States Internal Revenue Service.

50. The Debtor and the Debtor's Daughter operated Genesis in a way which permitted the Debtor to conduct the E-Bikes Business and to remove and conceal that business and the income it generated from the Debtor's creditors, including but not limited to Premier and the United States Internal Revenue Service.

9

51. The Debtor and the Debtor's Daughter operated Genesis continuously through the Petition Date and thereafter in a way which transferred, removed and concealed the E-Bikes Business from the Debtor's creditors, including but not limited to Premier and the United States Internal Revenue Service.

52. By virtue of the Debtor's actions, and pursuant to Section 727(a)(2) of the Bankruptcy Code, the Debtor is not entitled to a discharge.

WHEREFORE, Premier demands judgment against the Debtor denying the Debtor's discharge pursuant to 11 U.S.C. § 727(a)(2) and for such other relief as the Court deems equitable and just.

## SECOND COUNT
### Denial of Discharge – 11 U.S.C. § 727(a)(3)
### Concealing and Failing to Keep and Preserve Records

53. Premier repeats and realleges the allegations contained in paragraphs 1 through 52 as if set forth fully herein.

54. Upon information and belief, since at least 2001, the Debtor has maintained no bank accounts, checking accounts, stock accounts or other accounts in his own name.

55. Rather, the Debtor and the Debtor's Wife agreed that the Debtor would provide consulting services and operate the Models Coats Business and all of his other business activities through Soroban, but not draw any salary from Soroban and would be paid only by checks payable to "Cash" and drawn on Soroban's bank accounts. The Debtor and Soroban have failed to produce copies of any such checks.

56. In addition, upon information and belief, the Debtor and the Debtor's Wife agreed that various of the Debtor's expenses and the expenses of the Debtor's family would be paid directly or indirectly through Soroban from bank

10

accounts in its name on which the Debtor was a signatory or by credit cards on the account of the Debtor's Wife or Soroban. The Debtor and Soroban have failed to provide statements for any such bank accounts or credit card accounts.

57. By doing so, the Debtor, the Debtor's Wife and Soroban have concealed the Debtor's true assets, earnings and income and concealed falsified or failed to keep and preserve records from which creditors, including but not limited to Premier and the United States Internal Revenue Service, can establish the Debtor's financial condition.

58. Further, the Debtor, the Debtor's Wife and Soroban have failed and refused to preserve or produce the itemized statements of "Other Deductions" of the business of Soroban, as referenced in Soroban's tax returns.

59. In addition, commencing in at least 2011, the Debtor, the Debtor's Wife and the Debtor's Daughter agreed that the Debtor would operate the E-Bikes Business through Genesis and fund its operations through Soroban but not draw any salary from Genesis or Soroban and, instead, would be paid only by checks payable to "Cash" and drawn on Soroban's bank accounts. The Debtor, Soroban and Genesis have failed to produce copies of any such checks.

60. Beyond this, upon information and belief, the Debtor, the Debtor's Wife and the Debtor's Daughter agreed that various of the Debtor's expenses and the expenses of the Debtor's family would be paid directly or indirectly through Genesis and Soroban from bank accounts in their name on which the Debtor was a signatory. The Debtor, Soroban and Genesis have failed to provide any statements for any such bank accounts or credit card accounts.

61. By doing so, the Debtor, the Debtor's Wife, the Debtor's Daughter, Genesis and Soroban have concealed the Debtor's true assets, earnings and income and concealed falsified or failed to keep and preserve records from which creditors, including but not limited to Premier and the United States Internal Revenue Service, can establish the Debtor's financial condition.

62. By virtue of the Debtor's actions, and pursuant to Section 727(a)(3) of the Bankruptcy Code, the Debtor is not entitled to a discharge.

WHEREFORE, Premier demands judgment against the Debtor denying the Debtor's discharge pursuant to 11 U.S.C. § 727(a)(3) and for such other relief as the Court deems equitable and just.

### THIRD COUNT
### Denial of Discharge – 11 U.S.C. § 727(a)(5)
### Failure to Explain Loss or Deficiency of Assets

63. Premier repeats and realleges the allegations contained in paragraphs 1 through 62 as if set forth fully herein.

64. The Debtor's scheduled assets and his scheduled income are insufficient to pay the claims of his creditors.

65. The Debtor previously owned and conducted the Models Coats Business, but currently conducts that business for the benefit of the Debtor's Wife through Soroban.

66. The Debtor also provides consulting services through Soroban.

67. The Debtor also conducts the E-Bikes Business through Genesis and Soroban.

68. The Debtor has not adequately explained the uses of the income of Soroban.

69. The Debtor has not adequately explained his providing consulting services through Soroban and not in his own name.

70. The Debtor has not adequately explained his conducting the E-Bikes Business through Genesis and Soroban and not in his own name.

71. The Debtor has not adequately explained his accepting "Cash" payments from Soroban as his sole source of income and profits from his consulting services, the Models Coats Business and the E-Bikes Business.

72. By virtue of the Debtor's failures stated above, and pursuant to Section 727(a)(5) of the Bankruptcy Code, the Debtor is not entitled to a discharge.

WHEREFORE, Premier demands judgment against the Debtor denying the Debtor's discharge pursuant to 11 U.S.C. § 727(a)(5) and for such other relief as the Court deems equitable and just.

Dated:   March 31, 2014
         at Morristown, New Jersey

                RIKER DANZIG SCHERER HYLAND
                 & PERRETTI, LLP

By:    /s/    J. Alex Kress
     J. Alex Kress (N.J. Fed. Bar No. JK-7189)
     admitted *pro hac vice*
     Headquarters Plaza, One Speedwell Avenue
     Morristown, New Jersey 07962-1981
     (973) 538-0800

-and-

500 Fifth Avenue, Suite 4920
New York, New York 10110
(212) 302-6574

Counsel to Premier Capital, LLC

4475442v1